## STATE (<em>ex. rel.</em> HODGDON) <em>v.</em> LIBBEY.

The parental rights and duties can not be permanently assigned or transferred by a parol agreement, and therefore such agreement may be revoked by the parent on refunding the sums of money expended under it.

In such a case, on <em>habeas corpus</em>, the custody of a child will ordinarily be awarded to the father, unless the relation between the child and the respondent under the agreement has been of such duration and character that the happiness of the child would be endangered by severing it; or unless, from the unsuitableness of the father for the trust, or other cause, the permanent interests of the child are likely to be sacrificed.

THIS is a writ of <em>habeas corpus</em>, and the facts are sufficiently set forth in the opinion of the court.

<em>Wheeler & Hall</em>, for the relator.

<em>Christie</em>, for the respondent.

BELLOWS, J.   Ordinarily a father is entitled to the custody of his minor children, and upon <em>habeas corpus</em> both courts of law and equity have power to award it to him.   The application, however, being addressed to the sound discretion of the court, such award will be withheld when it is made clearly to appear that by reason of unfitness in the father for the trust, or other causes, the permanent interests of the child would be sacrificed by such change of custody; and in deciding upon this question the court will take into consideration the condition of the child with the persons from whose custody it is sought to be taken; its relation to them; the present and prospective provision for its support and welfare; the length of its residence there, and whether with the consent of its father, and the understanding, tacit or otherwise, that it should be permanent; the strength of the ties that had been formed between them, and if the child has come to years of discretion, its wishes upon the subject.

But while we should be disposed to consider the consent of the father that the respondent should have the custody and nurture of

the child, as an important element in determining the exercise of the judicial discretion, especially where it had been suffered to continue for many years, with its natural fruit of strong mutual affection; yet we are of the opinion that, as matter of law, the parental right and authority can not be assigned or transferred by a parol contract.

It is true there are decided cases which hold that the father may be barred by an assignment by deed, though lacking the form required by the statute for indentures of apprenticeship. But however this may be, we think that the preponderance of authority is against the legal validity of an assignment by parol.

At the same time there is no doubt that the father may bind himself, by a verbal contract, that his minor son shall labor for another for a year, or other period; and so by sending him to school he may confer upon the school-master the right, while the relation lasts, to enforce obedience to his rules; but neither the hirer of the servant, or the school-master, acquires over such minor any permanent control which the father can not recall, any more than the master does over the servant who is of age and agrees to labor for a specified term, but refuses to perform it, in which case the only remedy is by suit, and recovery of damages for a breach of contract.

So in the case of the agreement by the father for the labor of the minor son; the master acquires no power to restrain the liberty of the son against the authority of the father, but must resort to his action for the breach of the contract. Upon the general subject of the power of the father to delegate his parental authority, it is laid down by Mr. Chancellor *Kent* (2 Com. 264), that it is a settled principle of the English and American law, that the relation of master and apprentice can not be created, and the corresponding rights and duties of the parent transferred to a master, except by deed. So is *Castor* v. *Aicles,* 1 Salk. 68; also, *Queen* v. *Daniels,* 6 Mod. 182, where it is said that there is a distinction between a servant and an apprentice; that the latter can be only by deed and discharged only by deed, while the former may be by parol, citing 21 Hen. 6, pl. 23. So is *Squire* v. *Whipple,* 1 Vt. 691, where the father was sued for the breach of a parol contract of apprenticeship, by which his son was placed with the plaintiff to learn the trade of a tanner, and the defendant agreed that the son should serve the plaintiff until he was twenty-one years of age, but he left before that time. It was held that such a contract could be proved only by deed; and it was laid down by *Royce,* J., that the "necessity of a deed consists in the effectual renunciation of the natural rights of the parent, and the substitution of the master in his place, so as to draw after it all the corresponding rights and duties. In this point of view the transaction is highly solemn and important, and fully vindicates the wisdom of that peculiar care with which the common law has guarded it." In *King* v. *Arnesley,* 3 B. & A. 584, it was held that at common law a father could not bind his minor son apprentice without his consent, which must be by deed. So it is held that the indentures of an apprenticeship could not be discharged by parol. *Rex* v. *Skeffington,* 3 B. & A. 382; *Rex* v. *Bow,* 4 M. & S.

383. See, also, upon the general question, Reeve's Dom. Rel. 341; 1 Swift's Dig. 61; *Commonwealth* v. *Wilbanks*, 10 S. & R. 416.

In accordance with the doctrine that the father can not by parol delegate to another his parental rights and authority over his infant child, is the case of *Mayne* v. *Baldwin*, 1 Halst. Ch. 454. In that case the child was taken by the respondent, with the consent of the father, the relator, to be adopted and brought up until of full age, as his own, and the return stated that she was so adopted, and kept by him about sixteen months, when the writ was issued, the child then being five years and seven months old. The court held the agreement to be void as a contract of apprenticeship, and awarded the custody to the father.

The same doctrine was held in *State* v. *Clover*, 1 Harr. (N. J.) 419. In the case of the *People* v. *Mercein*, 3 Hill 408–411, *Cowen*, J., holds that the parental rights and duties can not be alienated, unless by indentures of apprenticeship, which he regards as an exception to the rule that ought never to be extended; and a similar view seems to be entertained by Chancellor *Walworth*, in *People* v. *Mercein*, 8 Paige Ch. 67. In *Westmeath* v. *Westmeath*, reported in note to *Lyons* v. *Blenkin*, 1 Jacob Ch. 251, the child was in the custody of the respondent, the mother, who was then living apart from her husband, the relator, in pursuance of a deed of separation, in which the husband covenanted that in the event of a separation he would permit their daughter, and such other children as they might have, to be and reside with the wife, and be educated under her care and superintendence; and by a subsequent deed a provision was made for the separate maintenance of the wife, and an annual allowance was agreed to be raised and paid to her for the maintenance of the infants. The children were, one five years and the other seven months old, and the custody was awarded to the father. This case is cited and approved in *People* v. *Mercein*, 8 Paige Ch. 67, as having gone upon the ground that the instrument was a contract for a future separation; and this is countenanced by the case of *Hindley* v. *Westmeath*, 6 B. & C. 200. In *Regina* v. *Smith*, 16 E. L. & E. 221, the father had agreed to let the child live with its uncle, who was to maintain and educate it until old enough to take care of itself; and the father promised not to remove the child from the uncle's care, or interfere with its education, but permit it to remain with him as his adopted child; and also agreed to pay him 14*s.* per month for such support and education. On *habeas corpus* it was decided that this agreement, which was apparently in writing, was in the nature of a consent which the father might revoke; and the custody was awarded to the father.

In *State* v. *Scott*, 30 N. H. 274, the mother, a widow, sent the child to the Shakers, with the request that the child should remain there as long as he was contented, and about a year afterward she visited the society, and expressed herself fully satisfied that he should remain there. The court say that if she had power to bind him apprentice, there is no suggestion that such power was legally exerted. In *Campbell* v. *Cooper*, 34 N. H. 49, it is held that no contract for the services of the child can bind it beyond the time of the

father's death, except by indentures of apprenticeship according to the statute, and therefore a parol gift could not be valid beyond the father's lifetime; and the court intimate that, according to *Mayne* v. *Baldwin*, such delegation of authority might be at any time revoked.

The principle to be gathered from these cases is, that the rights and duties of the father can not be transferred permanently to another, except by deed; and this seems to be the well settled doctrine of the common law. It is true there are cases where, on *habeas corpus*, the court have refused to award the custody of the child to the father, where he had consented that it should be brought up and adopted by the respondent, and had accordingly for many years permitted it so to remain. Such is the case of *Pool* v. *Gott*, 14 Law Rep. 269, before *Shaw*, C. J., at chambers, where the child was given up at its birth, its mother having then died, to its grandparents, who kept it at their own expense for thirteen years, without any demand by the father for its restoration. The court, assuming that it was mutually understood that the child should remain with them, and they to stand *in loco parentis*, refused to award the custody to the father, saying that as the child was allowed to remain so long, and the affections of the grand-parents and itself to become fixed and engaged, the relation could not be sundered without much suffering, and without risking the happiness of the child, who desired to remain; and the court also take into consideration that the grand-parents were in good circumstances, and would provide for the child at their death. Under such circumstances the judge might, perhaps, very properly, in the exercise of his discretion, refuse to give up the child to its father; but the decision is not based upon the ground that he had parted with his parental rights by verbal contract, although there are remarks which might seem to imply that it might be done. It is quite apparent that there may be cases where the father's conduct is such; as by permitting, tacitly or by express agreement, another to assume and discharge for many years the duties of parent to his child, with an understanding that the relation was to be permanent, he could not afterward attempt to reclaim his child in good faith, nor without subjecting to serious hazard its interests and happiness. In such a case the award of the custody of the child would not be consistent with the exercise of a sound judicial discretion; but at the same time the court would not be justified in withholding from him that custody upon the ground merely that there had been a parol gift of the child, or an agreement for its adoption by another, but without any subsequent formation of ties under it, or change of condition that would cause the resumption of the parental authority to jeopardize the interests or happiness of the child.

In this case the child, then about two years and five months old, was placed with the respondent in February, 1859, and maintained by him until December, 1862, when this application was made; and it appeared that until about December, 1861, a period of nearly three years, the father gave no notice of his wish to have the child restored to him. Upon the subject of the terms upon which the

child was taken by the respondent, the evidence is conflicting; but upon a careful consideration of it, we think that the return is not impeached, but that the father placed the child in the custody of the respondent, with an agreement that it should be his, and be brought up by him.    And the question now is, whether, in the exercise of a sound judicial discretion, the custody of the child ought to be withheld from the father.   The child had been suffered to remain with the respondent nearly four years before the application, and she is now about six and a half years old; and assuming that there is nothing in the character of the father or step-mother that renders them unsuitable to be intrusted with the nurture of the child, we can see nothing in the other circumstances that would make the change of custody sought for hazardous to the permanent interests and welfare of the child; certainly not to such an extent as to justify a final severing of the ties which bind the parent and the child together.

This accords with the views expressed in *State* v. *Richardson*, 40 N. H. 272, which, so far as the welfare of the child is concerned, was a stronger case than this, and is decisive of the question here, unless we give to the parol agreement a force to which it is not entitled.

Our opinion, therefore, is, that upon refunding the sums of money expended by the respondent under the agreement, the father may revoke his consent, and thereupon the custody of the child may be awarded to him, and the time being fixed for the refunding of the money so expended, the cause is continued for further proceedings.